IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01919-MSK-KMT

MARCUS A. MURPHY

    Plaintiff,

v.

WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State,

    Defendant.

## MOTION TO DISMISS
## AND MEMORANDUM OF LAW IN SUPPORT OF THEREOF

Defendant Wayne W. Williams, in his official capacity as Colorado Secretary of State, ("Secretary") hereby moves to dismiss the complaint ("Complaint") filed by Plaintiff Marcus A. Murphy, and submits this memorandum of law in support thereof.

### INTRODUCTION

Mr. Murphy unsuccessfully ran for congressional office in the 2018 Democratic primary election, receiving just 38 write-in votes. He now seeks to run for the same office as a write-in candidate in the general election. But Colorado's so-called "sore loser" law expressly limits candidates to one bite at the apple, and the Constitution permits this reasonable, nondiscriminatory ballot access requirement, which furthers Colorado's critical interest in regulating the election process. For these reasons, and the other grounds set forth below, the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6), and should be dismissed.

## FACTUAL AND STATUTORY BACKGROUND

Earlier this year, Mr. Murphy ran in the Democratic primary election as a write-in candidate for U.S. Representative of Colorado's Fifth Congressional District. Compl. ¶ 2. He did not receive the Democratic primary nomination, garnering just 38 write-in votes in the primary election. Compl. ¶ 2. Nevertheless, on June 26, 2018, Mr. Murphy submitted an affidavit to the Secretary stating his intent to run in the general election as a write-in Democratic candidate for the same office. Compl. ¶ 2. In early July 2018, the Secretary informed Mr. Murphy that pursuant to C.R.S. § 1-4-105, he is ineligible for election in the general election because he was defeated as a candidate for the same office in the preceding primary election. Compl. ¶ 2.

C.R.S. § 1-4-105, the sore loser law, provides that "[n]o person who has been defeated as a candidate in a primary election shall be eligible for election to the same office by ballot or as a write-in candidate in the next general election[.]" C.R.S. § 1-4-105. As the Colorado Supreme Court recognized 90 years ago, among other things, the law is designed to limit "dissension" and "disruption" within political parties and to strengthen party control and activity. *Armstrong v. Simonson*, 84 Colo. 472, 475 (1928). Sore loser laws are common: a recent academic study found that all but three states "effectively bar[ ]" sore loser candidacies. Michael S. Kang, *Sore Loser Laws and Democratic Contestation*, 99 GEO. L.J. 1013, 1043 (2011); *see also De La Fuente v. Merrill*, 214 F. Supp. 3d 1241, 1245 (M.D. Ala. 2016).

In this lawsuit, Mr. Murphy challenges the constitutionality of C.R.S. § 1-4-105 and the Secretary's application of the law. The Complaint purports to allege nine causes of action: claims pursuant to Article I, § 2, cl. 2 of the U.S. Constitution (Count I); the First Amendment (Count II); the Fifth Amendment (Count III); the Fourteenth Amendment (Count IV); 28 U.S.C. § 1331 (Count V); 28 U.S.C. § 1343(a) and 42 U.S.C. § 1985(1) & (3) (Count VI); 28 U.S.C. § 1355(a) (Count VII); and 42 U.S.C. § 1983 (Count VIII); and a claim that the Secretary's actions were arbitrary and capricious (Count IX).

## LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Harris v. Davita Healthcare Partners, Inc.*, No. 17-CV-02741-MSK, 2018 WL 3093322, at *2 (D. Colo. June 22, 2018) (Krieger, J.) (citing *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001)). The Court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute. *Id.* (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001)).

"A claim is subject to dismissal if it fails to state a claim for relief that is 'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678–79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Harris*, 2018 WL 3093322, at *2 (quoting *Iqbal*, 556 U.S. at 678–79). "What is required to reach the level of 'plausibility' varies from context to context, but generally, allegations that are 'so general that they encompass a wide swath of conduct, much of it innocent,' will not be sufficient." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

## ARGUMENT

### I. The Complaint fails to state a claim under F.R.C.P. 12(b)(6).

#### A. C.R.S. § 1-4-105 does not violate the Qualifications Clause, Article I, § 2 cl. 2 (Count I).

Mr. Murphy contends that C.R.S. § 1-4-105 conflicts with Article I, § 2, cl. 2 of the U.S. Constitution ("Qualifications Clause"), which sets forth the qualifications for office of U.S. Representative. The Qualifications Clause provides: "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and

4

been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen." U.S. Const. art. I, § 2, cl. 2. States do not "possess the power to supplement the exclusive qualifications set forth in the text of the Constitution." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827 (1995). But states may regulate "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," U.S. Const. art. I, § 4, cl. 1, and may enact "numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved," *Term Limits,* 514 U.S. at 834 (citation omitted). "The requirement that candidates demonstrate some measure of support before their names appear on the ballot generally is viewed as a legitimate exercise of a state's authority to regulate the manner in which elections are held." *Cartwright v. Barnes*, 304 F.3d 1138, 1142 (11th Cir. 2002) (citing *Storer v. Brown,* 415 U.S. 724, 746 n.16 (1974)).

Procedural ballot access restrictions that do not impose substantive qualifications do not violate the Qualifications Clause. *Id.* at 1143–44 (citing *Storer,* 415 U.S. at 733, 734–35, 746; *Term Limits*, 514 U.S. at 835); *Libertarian Party of Ill. v. Rednour*, 108 F.3d 768, 777 (7th Cir. 1997) ("[W]here requirements are procedural in nature and do not add substantive qualifications, they do not violate the Qualifications Clause.") (citing *Term Limits*, 514 U.S. at 835). For example, *Storer* rejected as "wholly without merit" an argument that a California disaffiliation law that independent candidates not affiliate with a political party one year prior to the

5

primary election ran afoul of the Qualifications Clause. 415 U.S. at 727, 737, 746 n.16. The Court held the procedural law furthered the state's interest in "maintaining the integrity of the various routes to the ballot," *id.* at 733, and was no more an additional qualification for office than the requirement "that the candidate win the primary to secure a place on the general ballot," *id.* at 746 n.16. Consistent with Supreme Court precedent in *Storer* and *Term Limits*, courts considering Qualifications Clause challenges to similar sore loser statutes unequivocally have upheld their constitutionality. *See, e.g.*, *De La Fuente v. Cortes*, 261 F. Supp. 3d 543, 554 (M.D. Pa. 2017) (The Pennsylvania sore loser law does not violate Qualifications Clause and under *Storer* is "constitutional as a matter of law."); *De La Fuente v. Merrill*, 214 F. Supp. 3d 1241, 1253–55 (M.D. Ala. 2016) (Alabama sore loser law is a procedural ballot access restriction, not a qualification, that "does not reach, let alone cross, the constitutional line."); *Nat'l Comm. of U.S. Taxpayers Party v. Garza*, 924 F. Supp. 71, 75 (W.D. Tex. 1996) (Texas sore loser law "is a ballot access regulation, not an indirect qualification" and does not violate Qualifications Clause).

The Colorado sore loser law, C.R.S. § 1-4-105, is a procedural election regulation, not a qualification for office. The law regulates *how* to access the ballot, not *who* can access it. *See* C.R.S. § 1-4-105. It therefore falls on the "procedural" side of the line between procedural election regulations (which are constitutional) and substantive qualifications for office (which are not). *See Cartwright*, 304 F.3d at 1143; *Merrill*, 214 F. Supp. 3d at 1253–55. Mr. Murphy fails to plausibly allege that C.R.S.

§ 1-4-105 imposes an unconstitutional qualification for office, and Count I must be dismissed.

### B. The Complaint fails to allege a First Amendment violation (Count II).

The Complaint contends that the application of C.R.S. § 1-4-105 impermissibly deprives Mr. Murphy of his First Amendment rights of free speech, assembly, and association.[1] But because the burden imposed by C.R.S. § 1-4-105 is not severe and the law furthers important, judicially-recognized state interests, the Complaint does not plausibly allege a violation of the First Amendment.

Courts analyze First Amendment challenges to state election laws using the *Anderson–Burdick* balancing test. *Utah Republican Party v. Cox*, 892 F.3d 1066, 1077 (10th Cir. 2018). Under *Anderson–Burdick*, the court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against the 'precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). "If a

---

[1] Count II of the Complaint also asserts that Colorado's open primary law, codified at C.R.S. § 1-7-201(2.3), entitling "eligible unaffiliated elector[s] … to vote in the primary election of a major political party without affiliating with that political party" means that unaffiliated voters retained a right to vote for Mr. Murphy in the general election. *See* Compl. ¶ 11. This argument is not supported by statute or case law and does not plausibly allege a violation of Mr. Murphy's First Amendment or other constitutional rights.

regulation is found to impose 'severe burdens' on [a plaintiff's] associational rights, it must be 'narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Clingman v. Beaver*, 544 U.S. 581, 586 (2005)).  But "when regulations impose lesser burdens, 'a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'" *Id.* (quoting *Clingman*, 544 U.S. at 586–87).

Colorado's sore loser statute does not impose a severe burden that would trigger strict scrutiny; instead, it is similar to other "generally-applicable and evenhanded restrictions" routinely upheld by the Supreme Court.  *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983); *accord Riddle v. Daley*, No. 09-CV-02680-MSK- CBS, 2010 WL 2593927, at *9–*11 (D. Colo. June 23, 2010) (Krieger, J.), *aff'd sub nom. Curry v. Buescher*, 394 F. App'x 438 (10th Cir. 2010).  Indeed courts repeatedly have held that similar sore loser statutes do not impose severe burdens.  *See Kennedy v. Pablos*, No. 1:16-CV-1047-RP, 2017 WL 2223056, at *5 (W.D. Tex. May 18, 2017) (Texas sore loser law does not impose a severe burden on First and Fourteenth rights of candidates); *Merrill*, 214 F. Supp. 3d 1256 (finding same for Alabama sore loser law); *Libertarian Party of Michigan v. Johnson*, 905 F. Supp. 2d 751, 760 (E.D. Mich. 2012) (finding same for Michigan sore loser law), *aff'd*, 714 F.3d 929 (6th Cir. 2013); *Garza*, 924 F. Supp. at 74 (finding same for Texas sore loser law).

C.R.S. § 1-4-105 imposes a minimal burden on candidates:  it merely requires a candidate to decide whether he will seek the nomination of a political party and to

abide by that choice for the duration of the election cycle. In other words, Mr. Murphy is only ineligible for election in the 2018 general election because he voluntarily chose to participate in the primary election. Had Mr. Murphy refrained from participating in the primary, C.R.S. § 1-4-105 would not have prevented him from qualifying as a write-in candidate in the general election. *See Merrill*, 214 F. Supp. 3d 1256 ("It cannot be over-emphasized that [plaintiff] is only barred from the ballot because of his voluntary participation in the Democratic Primary."); *Garza*, 924 F. Supp. at 74 ("[T]he magnitude of the injury [of the Texas sore loser law] is not great.").

Because the burden imposed by the sore loser law is not severe, the Court's inquiry is limited to whether Colorado's "important regulatory interests … justify [this] reasonable, nondiscriminatory restriction[]." *Cox*, 892 F.3d at 1077. They undeniably do. Colorado's interests include promoting fair and honest elections, ensuring an orderly electoral process, protecting the integrity of the electoral system, reserving the general election for major struggles not intraparty feuds, avoiding voter confusion, and limiting eligible candidates for office to those who have won the primaries and others who have properly qualified.  Each of these interests has been recognized as an important state interest by the Supreme Court. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (describing the state interest generally as an interest in "protecting the integrity and reliability of the electoral process"); *Storer*, 415 U.S. at 735–36 (finding it an "acceptable goal[ ]" to reserve the general election ballot for "major struggles" rather than "continuing intraparty

feuds"); *Clingman*, 544 U.S. at 593–94, (identifying state interests generally as "preserv[ing] political parties" and "enhance[ing] parties' electioneering and party-building efforts"); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) ("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes.")). And earlier this year, the Tenth Circuit reiterated that significant state interests include "regulating the manner in which a candidate may qualify for an election ballot[,]" "avoiding confusion, deception, and even frustration of the democratic process at the general election[,]" "protecting the integrity of their political processes from frivolous or fraudulent candidacies, in ensuring that their election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot." *Cox*, 892 F.3d at 1089–90 (citations omitted). Moreover, courts have held that sore loser laws advance these important state interests. *Kennedy*, 2017 WL 2223056, at *5; *Garza*, 924 F. Supp. at 74–75; *Johnson*, 905 F. Supp. 2d at 766; *Armstrong*, 84 Colo. at 475.

Under *Anderson–Burdick*, Colorado's judicially-recognized state interests are sufficient to uphold the requirements imposed by C.R.S. § 1-4-105. The Complaint fails to state a claim that C.R.S. § 1-4-105 violates the First Amendment.

**C.     The Complaint fails to state a claim for violation of due process under the Fifth or Fourteenth Amendments (Counts III and IV (in part)).**

Mr. Murphy must allege two elements to state a claim for violation of procedural due process: (1) a constitutionally protected liberty or property interest,

and (2) a governmental failure to provide an appropriate level of process. *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014) (citing *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.,* 535 F.3d 1243, 1256 (10th Cir. 2008); *Colo. Dep't of Pub. Health v. Bethell,* 60 P.3d 779, 786 (Colo. App. 2002)). Because the Complaint does not sufficiently allege either element, Mr. Murphy's due process violation claims (Counts III and IV (in part))[2] must be dismissed.

First, Mr. Murphy has not alleged a constitutionally protected property or liberty interest in running as a candidate for federal office in the general election. The right to run as a candidate for public office is not a recognized property or liberty interest. *See Snowden v. Hughes,* 321 U.S. 1, 7 (1944) (impositions on the right to run for state political office do not implicate the Due Process Clause); *Abeyta v. Town of Taos*, 499 F.2d 323, 327 (10th Cir. 1974) ("[P]ublic office … generally is held not to be a property interest within the meaning of the Fourteenth Amendment."); *Wilson v. Birnberg*, 667 F.3d 591, 597–98 (5th Cir. 2012) ("[P]ublic office does not constitute property within the meaning of the Due Process Clause."); *Velez v. Levy,* 401 F.3d 75, 86–87 (2d Cir. 2005); *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 194 (E.D.N.Y. 2013) (A candidate for federal office "has no property or liberty interest in an elected office. Nor does he have such an interest in being elected, or in appearing

---

[2] The Complaint raises a due process claim in two separate counts: Count III asserts a claim for violation of due process under the Fifth Amendment, and Count IV asserts claims for violation of due process and equal protection under the Fourteenth Amendments. Section I.C of this Memorandum addresses the alleged due process claim, and section I.D addresses the purported equal protection violation.

on a ballot."); *Cornett v. Sheldon,* 894 F. Supp. 715, 725–26 (S.D.N.Y. 1995) (holding that a candidate for federal office possessed neither property nor liberty interest in being placed on the ballot). Mr. Murphy's due process claim must fail as he has not alleged a constitutionally protected property or liberty interest.

Second, even assuming *arguendo* that Mr. Murphy alleged a constitutionally protected right, the Complaint fails to plausibly allege a governmental failure to provide an appropriate level of process. The Complaint does not come close to offering a coherent explanation of *how* the Secretary allegedly deprived Mr. Murphy of due process, and for that reason alone, the due process claim should be dismissed. Construing the Complaint quite liberally, Mr. Murphy appears to contend that he was not afforded due process because the Secretary informed Mr. Murphy by email that he is ineligible to run as a candidate in the general election "without referring-up to the Secretary for a formal, direct written, agency policy-statement[.]" Compl. ¶ 13. Yet this allegation is directly contradicted by earlier allegations in the Complaint that Mr. Murphy "exhausted all available administrative-remedies by requesting that the Elections Manager refer-up to the Secretary of State personally for re-consideration, and was subsequently informed via e-mail on July 9, 2018 … that upon consultation with elections-divisions attorneys, the decision is final." Compl. ¶ 2. From the plain terms of Mr. Murphy's own pleading, it appears he received a final, written decision from the Secretary.

12

Further, Colorado law affords Mr. Murphy the opportunity to seek judicial review of the Secretary's decision by filing a verified petition in state court within five days of the Secretary's decision. C.R.S. § 1-1-113. Mr. Murphy chose not to avail himself of that procedure, and cannot now claim that the state failed to provide an appropriate level of process. *See Murawski v. Pataki*, 514 F. Supp. 2d 577, 585–86 (S.D.N.Y. 2007) ("The fact that plaintiff did not avail himself of the opportunity to challenge the [board of elections'] determination [by filing a lawsuit as provided for by state law] does not create a procedural due process violation."). The Complaint's due process violation claim (Counts III and IV (in part)) should be dismissed.

**D.  The Complaint Fails to State a Claim for violation of equal protection under the Fourteenth Amendment (Count IV).**

The Complaint is devoid of any factual allegations that could support the bare claim that Mr. Murphy was not afforded equal protection. The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "'Equal protection is essentially a direction that all persons similarly situated should be treated alike.'" *Curry*, 394 F. App'x at 446–47 (quoting *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1322 n. 10 (10th Cir. 2010)). "Conversely, while a state 'must treat like cases alike,' it 'may treat unlike cases accordingly.'" *Id.* (quoting *Coalition for Equal Rights, Inc. v. Ritter,* 517 F.3d 1195, 1199 (10th Cir. 2008)).

13

The Complaint fails to allege that Mr. Murphy was treated worse relative to any similarly situated candidates or offer any other explanation as to how an equal protection violation supposedly occurred. *See Curry*, 394 F. App'x at 446–47 (holding candidate failed to establish equal protection violation where she was treated equally or better under law). The threadbare and conclusory equal protection claim (Count IV) does not suffice to state a claim, and must be dismissed. *See Iqbal*, 556 U.S. at 678.

### E. The Complaint does not allege causes of action under jurisdictional statutes 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), and 28 U.S.C. § 1355(a) (Counts V, VI (in part), VII).

The Complaint purports to allege violations of Mr. Murphy's rights under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), and 28 U.S.C. § 1355(a) (Counts V, VI (in part)[3], VII). Each of these statutes confers jurisdiction on federal courts. None creates a private right of action. Therefore, Counts V, VI (in part, to the extent it alleges a violation of 28 U.S.C. § 1355(a), and VII) of the Complaint fail to state a claim for relief that is plausible on its face, and must be dismissed.

### F. The Complaint does not state a claim for violation of civil rights under 42 U.S.C. § 1985(1) and (3) (Count VI).

The Complaint contends that Mr. Murphy was deprived of his civil rights in violation of 42 U.S.C. § 1985(1) and (3). The relevant portion of § 1985(1) provides a

---

[3] Count VI also purports to allege claims for violation of civil rights under 42 U.S.C. § 1985(1) & (3). The § 1985 claims must also be dismissed for the reasons stated *infra* at Section I.F.

14

right of action "[i]f two or more persons … conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof[.]" 42 U.S.C. § 1985(1). Section 1985(3), clause 1, provides in pertinent part, a right of action "[i]f two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privilege and immunities under the laws[.]" 42 U.S.C. § 1985(3). Among other elements, both causes of action require allegations of "class-based or racial discriminatory animus." *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984).

The 42 U.S.C. § 1985(1) and (3) claims are deficient for multiple reasons. First, neither claim alleges facts supporting a conspiracy between the Secretary and one or more persons. *Hogan v. Winder*, 762 F.3d 1096, 1113–14 (10th Cir. 2014) (affirming dismissal of § 1985 claim for failure to allege facts supporting a meeting of the minds). Second, the Complaint's failure to allege racial discrimination or similar animus is fatal to these claims. *Santistevan*, 732 F.2d at 117–18 (affirming dismissal of § 1985 claims where plaintiff failed to allege racial or class-based discriminatory animus). Third, the claim pursuant to § 1985(1) must fail because the Complaint lacks any allegations regarding "force, intimidation, or threat" by the Secretary. As such, the § 1985 claims in Count VI must be dismissed.

  **G.** **The Complaint does not state a claim for a violation of 42 U.S.C. § 1983 (Count VIII).**

To state a claim under § 1983, Mr. Murphy must allege: (1) deprivation of a federally protected right by (2) an actor acting under color of state law. *Schaffer v. Salt Lake City Corp.,* 814 F.3d 1151, 1155 (10th Cir. 2016). In support of the § 1983 claim, the Complaint contends that Mr. Murphy was deprived of his Qualifications Clause and First Amendment rights. Complaint ¶ 23. For the reasons set forth above in Sections I.A through I.D, the Complaint fails to sufficiently allege violations of any federally protected rights. Thus, the Complaint also fails to state a claim for violation of § 1983, and Count VIII must be dismissed.

### H. The Complaint fails to state a claim for arbitrary and capricious action by the Secretary of State of Colorado (Count IX).

The nature of Mr. Murphy's claim that the Secretary's actions were arbitrary and capricious is unclear. This claim appears to be an effort to circumvent Colorado law establishing that a hearing pursuant to C.R.S. § 1-1-113 provides the "exclusive method for the adjudication of controversies arising from a breach or neglect of duty or other wrongful act [under the election code] that occurs prior to the day of an election." Mr. Murphy did not seek review pursuant to C.R.S. § 1-1-113, and this court should decline to exercise review of this state law claim, as suggested by the very law review article cited by the Complaint. *See* Compl. ¶ 25 (quoting Ann Woolhandler & Michael G. Collins, *Judicial Federalism and the Administrative States*, 87 CALIF. L. REV. 613, 702 (1999) ("[F]ederal courts should ordinarily decline to entertain claims that a state agency has acted unreasonably …. [or] arbitrar[ily][.]")). Mr. Murphy

16

may not pursue a federal lawsuit alleging that the Secretary's actions were arbitrary and capricious.

Even if Mr. Murphy could pursue such a claim in federal court, the Complaint fails to allege any actions that were arbitrary or capricious. *See* Compl. ¶ 25. "[I]n order to find that an administrative agency has acted arbitrarily, a reviewing court must find that no substantial evidence exists in the record to support [the agency's] decision." *Moya v. Colorado Ltd. Gaming Control Comm'n*, 870 P.2d 620, 624 (Colo. App. 1994). There must be a clear error of judgment and a court is not permitted to substitute its judgment for that of an agency. *Id*. So long as the agency decision reflects a conscientious effort to reasonably apply legislative standards to particular administrative proceedings, it is neither arbitrary nor capricious. *Id*. Mr. Murphy's own allegations establish that the Secretary applied well-settled law to determine that Mr. Murphy was ineligible for election in the 2018 general election based on his (admitted) prior participation in the primary election. The Complaint does not allege a lack of substantial evidence for the Secretary's decision, nor does it allege a clear error of judgment. The Complaint does not set forth any facts supporting arbitrary and capricious action by the Secretary.

Finally, to the extent that this claim could be construed as a constitutional challenge to the Secretary's application of C.R.S. § 1-4-105, the Complaint fails to allege any constitutional violations as discussed *supra* in Sections I.A through I.D.

The claim pertaining to arbitrary and capricious state action (Count IX) must be dismissed.

## CONCLUSION

Because the Complaint fails to state a claim to relief that is plausible on its face, the Secretary respectfully requests that the Court grant the motion to dismiss and dismiss the Complaint in its entirety.

Submitted this 12th day of September, 2018.

                          CYNTHIA H. COFFMAN
                          Attorney General

                          *s/ Emily Buckley*
                          EMILY BUCKLEY, 43002*
                          Assistant Attorney General
                          State Services Section
                          Public Officials Unit
                          Colorado Attorney General's Office
                          1300 Broadway, 6th Floor
                          Denver, CO  80203
                          Telephone:  720-508-6403
                          E-Mail:  emily.buckley@coag.gov
                          ***Counsel of Record for Defendant*

## CERTIFICATE OF SERVICE

  I hereby certify that on September 12, 2018, I served a true and complete copy of the foregoing **MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF** upon all parties through U.S. Mail as follows:

Marcus A. Murphy
5795 Southmoor Drive, Lot 53
Fountain, CO  80817


                /s/ *Emily Buckley*_____